[No. B067451. Second Dist., Div. Six. Oct. 5, 1993.]

CANYON NORTH COMPANY et al., Plaintiffs and Appellants, v.
CONEJO VALLEY UNIFIED SCHOOL DISTRICT et al., Defendants and
Respondents.

CANYON NORTH GROUP, Plaintiff and Appellant, v.
CONEJO VALLEY UNIFIED SCHOOL DISTRICT et al., Defendants and
Respondents.

## COUNSEL

Cohen, Alexander & Clayton and Raymond C. Clayton for Plaintiffs and Appellants.

Parker, Covert & Chidester, Clayton H. Parker and Jonathan J. Mott for Defendants and Respondents.

## OPINION

WILLARD, J.*—This appeal is from judgments in favor of defendants in two lawsuits consolidated for trial. In action No. 96878 plaintiffs are a general partnership, a joint venture and a corporation. It relates to a parcel of real property, 11.45 acres in size, located in the City of Thousand Oaks.

*Retired judge of the Ventura Superior Court sitting under assignment by the Chairperson of the Judicial Council.

Defendants are the Conejo Valley Unified School District (hereinafter the District), its governing board, the individual board members and its superintendant. In action No. 102422 the sole plaintiff is the general partnership that is one of the plaintiffs in action No. 96878. The action relates to two parcels of real property within Thousand Oaks. One is 6.99 acres and the other 28.67 acres in size. The defendants are the District, its board and the City of Thousand Oaks.

In each case appellants and plaintiffs paid, under protest, school facility fees levied by the District pursuant to Government Code section 53080.[1] By these consolidated actions they seek recovery of a portion of such fees.[2]

Appellants base their claim upon three contentions. One is that they are entitled to exemption pursuant to section 65995, subdivision (c). The second is based upon subdivision (b) of the same section. The third is that the District failed to show a need for the fees that were levied. These contentions are lacking in merit. We affirm both judgments.

*Factual Background*

The 3 tracts of land here involved, comprising 47.11 acres, are located in what was once the Rancho El Conejo Spanish land grant. The earliest vesting shown in the record on appeal is that created by an 1874 judicial partition judgment involving a much larger parcel of land.[3] From there the record on appeal skips to 1972, when specific plan No. 4 was adopted by the City of Thousand Oaks for a large area of land, including property here involved, owned by Prudential Insurance Company of America. In 1982 Prudential secured approval of a tentative map, and on July 18, 1983, a final map was approved by the City of Thousand Oaks and recorded.[4] The map subdivided an area of 373.12 acres into 19 parcels, including the 3 involved in this litigation. Prudential caused some grading, utility and street work to be done, but did not construct any residential, commercial or other type of building. Instead, it sold the 3 parcels here involved, together with 2 additional parcels, 1 of 23.43 acres and the other of 11.45 acres, to 1 or more of the appellants. Appellants then proceeded to install or complete additional

---

[1]All further statutory references are to the Government Code unless otherwise specified.

[2]They offered to pay a much smaller amount that would have been payable pursuant to a contract between themselves and the District with regard to a tract not involved in this litigation. That contract was dated May 10, 1984, and by its terms, expired May 10, 1985. The District declined their offer.

[3]The judgment, including the map contained therein, is recorded in book 1 of Deeds, page 746, Office of the Ventura County Recorder.

[4]In book 96 of Miscellaneous Records, page 77, Office of the Ventura County Recorder.

infrastructure to serve all five parcels. They subdivided the 2 "additional parcels" by securing approval of and recording final maps, after which they constructed 80 residential units on one of the tracts and 78 on the other.[5]

Appellants also filed a tentative map for subdivision of their 11.45-acre tract, identified as No. 3915. Thereafter on October 29, 1986, the city approved a final map permitting the construction of 76 attached duplex units. School facility fees of $1.50 per square foot of residential construction were paid under protest before the building permits issued.

The 28.67-acre parcel involved in action No. 102422 was subdivided as tract No. 4195 into 92 single-family residential lots by approval of a final map on July 28, 1987. School facility fees were paid under protest, and building permits were issued.

The 6.99-acre tract owned by appellants was not subject to further subdivision. Instead, after levy and payment of a school facilities fee, approval was granted on April 5, 1988, for the construction of a 126-unit apartment complex. Thereafter, a building permit was issued and the apartment complex was constructed.

On November 12, 1986, the District established a school facilities fee of $1.50 per square foot for residential construction. On the same day it approved a growth plan that included estimates of future school facility needs. The plan was detailed and lengthy. It included a housing forecast showing the number of new housing units expected to be constructed within the District, an enrollment forecast showing the number of new students expected to be added due to the new housing, and a facilities analysis showing the nature and cost of the new facilities required to educate children from the new housing. Although student population had declined, it was anticipated that the new housing would reverse the trend.

## DISCUSSION

In 1986 the Legislature authorized school districts to levy school facility fees on residential, commercial and industrial construction. (§§ 53080,

---

[5]The two tracts first developed and not involved in this litigation are described as follows:

| Tract No. | Acreage | Residential Units |
| --- | --- | --- |
| 4196 | 23.43 | 80 |
| 3916 | 14.22 | 78 |

The three tracts to which these lawsuits relate are described as follows:

| Tract No. | Acreage | Residential Units |
| --- | --- | --- |
| 3915 | 11.45 | 76 |
| 4195 | 28.67 | 92 |
| RPD-360 | 6.99 | 126 |

65995.) Issuance of building permits for such construction was prohibited in the absence of certification by the school district for the area involved that the fee had been paid or that no such fee was applicable. An exemption was provided for any project "for which a final map was approved and construction had commenced on or before September 1, 1986." (§ 65995, subd. (c)(2).)

■ Appellants contend that the final map obtained by Prudential in 1983 for the subdivision of its 373.12-acre tract into 19 sub-tracts was "a final map" within the meaning of the statute. They claim that the statute's use of the indefinite article "a" grammatically refers to *any* final map, even though it may not be the final map subdividing the property into residential lots or units.

Appellants, however, were required to subdivide two of their properties in order to construct and sell residential units. This necessitated approval of two new final maps. These were the maps that created residential sized lots that led to new school population. Appellants were also required to obtain a special use permit to construct an apartment complex on the third parcel.

Prudential's map was a remote step on the path leading to new housing, but by itself did not create residential lots or provide any rational basis for estimating what new school facilities would be required or their cost. It did not justify a school facilities fee. If such a final map approval foreclosed levy of school facilities fees, the District would have to bear the entire burden of providing such facilities.[6] It is not reasonable to conclude that such was the intent of the Legislature.[7]

■ The second condition for exemption under section 65995, subdivision (c)(2) is the commencement of construction prior to September 1, 1986.

---

[6]Conceivably the developers might make a donation for such purpose in order to expedite the sale of their developments.

[7]In enacting section 53080, the Legislature stated: "The Legislature finds and declares as follows:

"(a) Many areas of this state are experiencing substantial development and population growth, resulting in serious overcrowding in school facilities.

"(b) Continued economic development requires the availability of the school facilities needed to educate the state's young citizens.

"(c) In growing areas of this state, the lack of availability of the public revenues needed to construct school facilities is a serious problem, undermining both the education of the state's children and the continued economic prosperity of California.

"(d) For these reasons, a comprehensive school facilities finance program based upon a partnership of state and local governments and the private sector is required to ensure the availability of school facilities to serve the population growth generated by new development.

"(e) The Legislature therefore finds that the levying of appropriate fees by school district governing boards at the rates authorized by this act is a reasonable method of financing the

Appellants claim that such construction was commenced by infrastructure improvements installed by Prudential and then by themselves. Here, the improvements consisted of two streets, drainage facilities, and utilities to service the entire 373.12-acre tract. Some of the work was completed prior to September 1, 1986.

In 1987 the Legislative Counsel issued an opinion regarding what constitutes "construction within the development," as used in subdivision (c). While his opinion does not carry the weight of precedent, it is convincing. We quote:

"The second sentence of subdivision (c) of Section 65995 exempts any 'development project' for which a final map was approved and construction commenced on or before September 1, 1986, from any fee or other requirement subject to Section 65995. Subdivision (a) of Section 65995 specifically cross-references the definition of 'development project' in Section 65928.

". . . . . . . . . . . . . . . . . . . . . . . .

"Although Section 65928 defines 'development project,' with certain exceptions, to mean all projects undertaken for the purpose of 'development,' as broadly defined by Section 65927, it seems clear that Section 65995 is only intended to apply to development projects that entail residential, industrial, or commercial construction, subject to the fee limitations of subdivision (b) of Section 65995. Because subdivision (b) of Section 65995 bases its fee limitations on a rate per square foot of covered or enclosed space, it follows that the section has no application to development projects that do not include residential, commercial, or industrial structures (see also Sec. 53080 and subd. (c), Sec. 65974).

"Given this limitation, the apparent purpose of the exemption in the second sentence of subdivision (c) of Section 65995 is, we think, to protect development projects involving both subdividing and building that are in a construction phase as of September 1, 1986, from the imposition of additional, unanticipated costs in the form of school facilities fees levied after that date (see Sec. 53080).

"However, there is an ambiguity in the second sentence of subdivision (c) of Section 65995 as to what 'construction' must have commenced by September 1, 1986. Arguably, 'construction' could refer either to construction of buildings or to subdivision improvements, since an exempted development project will normally include both types of construction.

---

expansion and construction of school facilities resulting from new economic development within the district." (Stats. 1986, ch. 887, § 7, p. 3080.)

"Where a word or phrase is used in more than one context in a statute, it is ordinarily presumed to have the same meaning throughout (*Cory* v. *Knight*, 150 Cal. App. 2d 671, 680 [310 P.2d 673]). Thus, we think the Legislature intended the term 'construction' in the second sentence of subdivision (c) of Section 65995 to have the same meaning as the references to residential, industrial, and commercial construction in subdivision (b) of Section 65995.

"Because exactions subject to Section 65995 cannot be levied for the privilege of subdividing as such, but only for the privilege of building, it follows that the term 'construction,' as used in the exemption of subdivision (c) of Section 65995, was intended to refer to development projects that include construction otherwise subject to exactions subject to Section 65995." (Ops. Cal. Legis. Counsel, No. 8454 (Apr. 24, 1987) School Facilities: Developer Fees, pp. 3-5.)

In addition, appellants contend that their projects are exempt pursuant to subdivision (c)(1) of section 65995.[8] This contention is based on the assumption that a contract existed prior to September 1, 1986, for payment of school facility costs. Although such a contract was entered into in 1984, it expired by its own terms on May 10, 1985. The District declined to renew it or to accept fees tendered after its expiration.

Appellants also suggest that such a contract can be implied from adoption in 1972 by the City of Thousand Oaks of Special Plan No. 4 for property owned by Prudential. It projected a population of 7,068 and provided for the dedication of 3 school sites. Several amendments were made to the specific plan, including reduction of projected population to 3,044 and the relocation of school sites. It is impossible, however, to imply that this special plan foreclosed levy of fees for school construction. The plan contained an express agreement by Prudential on its own behalf and on behalf of its successors to pay school fees based on the District's needs.

Appellants' final contention is that the school facilities fee of $1.50 per square foot of residential construction bore no reasonable relationship to their projects. The trial judge found to the contrary. In reviewing his decision, we note that imposition of the fee was quasi-legislative.

_____

[8]"Notwithstanding any other provision of law, during the term of any contract entered into between a subdivider or builder and a school district, city, county, or city and county, whether general law or chartered, on or before January 1, 1987, that requires the payment of a fee, charge, or dedication for the construction of school facilities as a condition to the approval of residential development, neither Section 53080 nor this chapter applies to that residential development." (*Ibid.*)

■ "We determine only whether the action taken was arbitrary, capricious or entirely lacking in evidentiary support, or whether it failed to conform to procedures required by law. Such limited review is grounded on the doctrine of separation of powers which (1) sanctions the legislative delegation of authority to the agency and (2) acknowledges the presumed expertise of the agency. [Citation.] The inquiry into arbitrariness or capriciousness is like substantial evidence review in that both require a *reasonable basis* for the decision. [Citation.]" (*Garrick Development Co.* v. *Hayward Unified School Dist.* (1992) 3 Cal.App.4th 320, 328 [4 Cal.Rptr.2d 897].) A rational connection must exist between the fee charged and the cost of providing the service. (*Shapell Industries, Inc.* v. *Governing Board* (1991) 1 Cal.App.4th 218, 235 [1 Cal.Rptr.2d 818].)

■ The District's growth plan was explicitly stated to be "an essential element in determining the need for those fees." The growth plan contained the information necessary to impose the fee. It included:

(1) A housing forecast showing the number of new housing units expected to be constructed within the District;

(2) An enrollment forecast showing the number of new students expected to be added due to the new housing; and

(3) A facilities analysis showing the nature and cost of the new facilities required to educate the new students from new housing.

Recent case law makes it clear that a district-wide fee is proper. "Plaintiffs fault the report for failing to include 'site-specific' data showing a 'close connection' between new development and the fees to be imposed. . . . The fee at issue here is a general one applied to all new residential development and valid if supported by a reasonable relationship between the amount of the fee and estimated cost of services. *Site-specific review is neither available nor needed.* (*Shapell Industries, Inc.* v. *Governing Board, supra*, 1 Cal.App.4th 218, 239.)" (*Garrick Development Co.* v. *Hayward Unified School Dist., supra*, 3 Cal.App.4th 320, 333-334, italics added.)

Appellants argue that evidence at the trial showed that District pupil enrollment had not increased by 1992 as predicted in the 1986 growth plan. Such evidence is irrelevant. Justification for the fee depends upon the information available at the time the fee was imposed. (*Shapell Industries, Inc.* v. *Governing Board, supra*, 1 Cal.App.4th 218, 233-234.)

The judgments are affirmed. Respondents are entitled to costs on appeal.

Stone (S. J.), P. J., and Gilbert, J., concurred.

A petition for a rehearing was denied October 29, 1993, and appellants' petition for review by the Supreme Court was denied January 20, 1994. Panelli, J., was of the opinion that the petition should be granted.