Filed 7/31/13

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| CRESTA BELLA, LP,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>POWAY UNIFIED SCHOOL DISTRICT,<br><br>    Defendant and Respondent. | D060789<br><br><br><br>(Super. Ct. No. 37-2009-00103450-<br>  CU-MC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Lisa A. Foster, Judge.  Reversed with directions.

McNeill Law Offices and Walter P. McNeill for Plaintiff and Appellant.

Best Best & Krieger, James B. Gilpin, Tyree K. Dorward and Matthew L. Green for Defendant and Respondent.


Poway Unified School District (the District) imposed school impact fees on Cresta Bella, LP (Cresta Bella) for a residential development project involving the demolition of an existing apartment complex and construction of a new, larger apartment complex. Cresta Bella petitioned for writ of mandate in superior court seeking a partial refund of the fees based on a claim that it was improperly charged for the *entire* square footage of

the new apartment complex, rather than only for the *increased* square footage created by the development. On the same grounds, it also alleged an unconstitutional taking and requested declaratory relief. The court denied the mandate petition and entered judgment in favor of the District on all claims. Cresta Bella appeals.

We hold that under the statutory scheme applicable to school impact fees, the fees should not be imposed for the square footage already in existence at the time of the new development project, absent a study that reasonably supports that reconstruction of preexisting square footage increases student population. The District's school impact fee study did not make this showing. Accordingly, Cresta Bella is entitled to a refund of the portion of the fees derived from the preexisting square footage in its project. We reverse the judgment and remand the matter to the trial court with instructions to grant the mandate petition and order the refund. Given our holding providing relief under the mandate petition, we need not reach the constitutional taking and declaratory relief claims.

FACTUAL AND PROCEDURAL BACKGROUND

To pay for the construction of school facilities necessitated by student population increases, school districts are authorized to impose school impact fees for new residential construction. The fees are subject to statutorily-defined maximum amounts for each square foot of the new residential construction. (Ed. Code, § 17620, subd. (a); Gov. Code, § 65995.) There are several alternative statutory formulas for calculating the maximum fee per square foot (Gov. Code, §§ 65995, 65995.5, 65995.7), which are commonly known as Level 1, Level 2, and Level 3 fees. Relevant here, in July 2008 a

2

consulting firm retained by the District prepared a district-wide school facilities needs analysis (SFNA) in which it calculated that the maximum Level 2 fee for the District was $3.89 per square foot of new residential construction. Based on the SFNA, in August 2008 the District passed a resolution which adopted a school impact fee of $3.89 per square foot, and which applied the fee to the entire square footage of a development project, including *preexisting* square footage (i.e., existing footage that was demolished and reconstructed).

Cresta Bella owned an apartment complex consisting of 248 units and 258,169 square feet. It demolished this complex and built a new apartment complex consisting of 368 units and 371,612 square feet. Thus, the new apartment complex had 120 more units and 113,443 more square feet than the complex being demolished. The District charged Cresta Bella school impact fees based on the entire square footage of the new apartment complex (i.e., 371,612 square feet multiplied by $3.89, totaling $1,445,570.60).

In June 2009, Cresta Bella paid the school impact fees under protest. Cresta Bella argued it should not have to pay fees for the preexisting square footage in the project because the District did not evaluate whether preexisting footage in new residential construction impacts school facilities by increasing student population. It claimed the District had improperly charged fees for the entire square footage of its project, resulting in $1,004,277.40 in excess fees.[1]

---

[1] If the preexisting square footage had been excluded, the fees would have been $441,293.27 (113,443 additional square footage multiplied by $3.89) rather than $1,445,570.60.

3

After exhausting its administrative remedies, in May 2010 Cresta Bella filed a petition for writ of mandate in superior court seeking a refund of the alleged excess fees. It also pleaded causes of action alleging an unconstitutional taking and requesting declaratory relief. To refute Cresta Bella's challenge to the imposition of fees for the preexisting square footage, the District argued there was no improper fee calculation because in an attached exhibit (Exhibit H) the SFNA considers the impact of preexisting units in new residential construction.

After considering the parties' evidentiary presentations and arguments, the trial court, citing Exhibit H of the SFNA, concluded that the District had not imposed an improper or unconstitutional fee. Accordingly, the court denied the writ petition and entered judgment in favor of the District on all claims.

DISCUSSION

To review Cresta Bella's challenge to the school impact fees, we first summarize the statutes and case authority governing school impact fees. We then set forth information in the SFNA and other matters relevant to the District's imposition of the fees and the trial court's decision denying Cresta Bella's request for a partial refund.

As we shall detail below, under the statutory scheme and relevant case authority, a school district that qualifies for a Level 2 fee must set the maximum amount of the fee based on a rather complex formula that incorporates a variety of statutorily-defined variables. The Level 2 statutory formula setting the maximum fee does not allow the school district to recoup the *total actual costs* estimated for new school facilities necessitated by the projected increases in student population from new residential

4

development; rather, only a *portion* of these estimated costs are recoupable under the Level 2 formula. In addition to calculating the maximum Level 2 fee, the school district must establish that there is a *reasonable relationship* between the development activity and the impact on the school district; i.e., that *the type of development activity subjected to the school impact fees tends to increase the student population and thereby requires the district to construct new school facilities*.

The District's SFNA concludes that the District may properly charge school impact fees for reconstruction of existing residential units (i.e., *preexisting* square footage) because the statutorily-defined maximum Level 2 rate does not allow the District to recoup the estimated *actual* costs of constructing new school facilities to accommodate projected new students from *newly-added* (nonpreexisting) square footage. However, as we shall explain, the SFNA does not contain any information showing that reconstruction of preexisting square footage *contributes* to an increase in student population in the District. Accordingly, the District's imposition of fees for the preexisting square footage in Cresta Bella's project does not pass the required reasonable relationship test.

## A. *The Statutory Scheme*

Legislation authorizing school impact fees was enacted to provide a " 'reasonable method of financing the expansion and construction of school facilities resulting from new economic development within the district.' " (*Shapell Industries, Inc. v. Governing Board* (1991) 1 Cal.App.4th 218, 227 (*Shapell*).) To this end, Education Code section 17620, subdivision (a)(1)(B) permits school districts to levy fees against new residential construction in the district to fund the construction or reconstruction of school facilities,

5

subject to the limitations set forth in Government Code section 65995 et seq.[2]  Under the relevant Government Code provisions, the school impact fees are based on a particular monetary amount for each square foot of "assessable space" of residential construction. (§§ 65995, subd. (b)(1), 65995.5.)  Section 65995.5 provides for a Level 2 fee that may be used when the school district meets certain statutorily-specified criteria that show a particular need for additional funds for school construction.[3]  The school district must also follow specified procedures to adopt the fee, including "[c]onduct and adopt a school facility needs analysis [SFNA] pursuant to Section 65995.6."  (§ 65995.5, subd. (b)(2).)  The SFNA is designed "to determine the need for new school facilities for unhoused pupils that are attributable to projected enrollment growth from the development of new residential units over the next five years."  (§ 65995.6, subd. (a).)[4]  The projections are "based on the historical student generation rates of new residential units constructed during the previous five years that are of a similar type of unit to those anticipated to be

[2]    Education Code section 17620 states in relevant part:  "(a)(1) The governing board of any school district is authorized to levy a fee . . . against any construction within the boundaries of the district, for the purpose of funding the construction or reconstruction of school facilities, subject to any limitations set forth in [Government Code] Section 65995 [et seq.] . . . .  This fee . . . may be applied to construction only as follows:  [¶] . . . [¶] (B) To new residential construction."

    Subsequent unspecified statutory references are to the Government Code.

[3]    The district must satisfy at least two of four criteria related to multitrack year-round scheduling of students; voting results on a school financing local bond measure; school debt obligations for capital outlay; and relocatable classrooms.  (§ 65995.5, subd. (b)(3).)

[4]    "Unhoused pupils" refers to students for whom there are no seats in the existing school facilities.

6

constructed . . . ."  (*Ibid*.)  The SFNA must evaluate the funds necessary to meet the district's facility needs, and include a consideration of such factors as surplus property owned by the district, excess capacity in existing facilities, and local sources of revenue other than fees.  (§ 65995.6, subd. (b).)

Further, the school district must calculate the maximum Level 2 fee that may be imposed per square foot of residential construction based on a formula set forth in section 65995.5, subdivision (c).  The Level 2 formula involves calculations based on a variety of statutorily-defined variables, and ultimately provides for a fee that reflects only a *portion* of the estimated new facilities costs generated by the projected new unhoused pupils identified in the SFNA.  (§ 65995.5, subds. (c), (h).)  After the preparation of the SFNA, the district must provide a 30-day period for public review and comment, and thereafter at a public hearing adopt the SFNA and the authorized Level 2 fee for a one-year period. (§ 65995.6, subds. (c), (f).)

In addition to these specific provisions governing imposition of school impact fees on new residential development, the Government Code also contains provisions (known as the Mitigation Fee Act, § 66000.5) which include a general reasonable relationship standard for imposition of developer fees.  This statute provides that when a local agency imposes a fee as a condition of approval of a development project, it must determine that there is a reasonable relationship between (1) the need for the public facility for which the fee will be used, and (2) the type of development project on which the fee is imposed.

7

(§ 66001, subd. (a)(3) & (4).)[5]  As explained in *Shapell*:  "[F]acilities fees are justified only to the extent that they are limited to the cost of increased services made necessary by virtue of the development.  [Citations.]  The Board imposing the fee must therefore show that a valid method was used for arriving at the fee in question, 'one which established a reasonable relationship between the fee charged and the burden posed by the development.' "  (*Shapell, supra*, 1 Cal.App.4th at p. 235.)

In the context of school impact fees, the reasonable relationship standard can be satisfied by showing:  (1) the projected total amount of new housing expected to be built within the District; (2) the estimated number of students to be generated by the new housing; and (3) the estimated cost to provide the necessary school facilities for that approximate number of students.  (*Shapell, supra*, 1 Cal.App.4th at p. 235; *Warmington Old Town Associates v. Tustin Unified School Dist*. (2002) 101 Cal.App.4th 840, 860 (*Warmington*).)  This showing may properly be derived from district-wide estimations concerning anticipated new residential development and impact on school facilities. (*Garrick Development Company v. Hayward Unified School District* (1992) 3 Cal.App.4th 320, 335 (*Garrick*); *Canyon North Co. v. Conejo Valley Unified School District* (1993) 19 Cal.App.4th 243, 251; *Warmington, supra*, 101 Cal.App.4th at p. 862.)

---

5    Section 66001 states:  "(a) In any action establishing, increasing, or imposing a fee as a condition of approval of a development project by a local agency, the local agency shall do all of the following:  [¶]  (1) Identify the purpose of the fee.  [¶]  (2) Identify the use to which the fee is to be put . . . .  [¶]  (3) Determine how there is a reasonable relationship between the fee's use and the type of development project on which the fee is imposed.  [¶]  (4) Determine how there is a reasonable relationship between the need for the public facility and the type of development project on which the fee is imposed."

The district is not required to evaluate the impact of a *particular* development project before imposing fees on a developer; rather, the required nexus is established based on the justifiable imposition of fees "on a *class* of development projects rather than particular ones." (*Garrick, supra*, 3 Cal.App.4th at p. 335.)  Further, because the fee determination process "will necessarily involve predictions regarding population trends and future building costs, it is not to be expected that the figures will be exact.  Nor will courts concern themselves with the District's methods of marshalling and evaluating scientific data.  [Citations.]  Yet the court must be able to assure itself that before imposing the fee the District engaged in a reasoned analysis designed to establish the requisite connection between the amount of the fee imposed and the burden created." (*Shapell, supra*, 1 Cal.App.4th at p. 235.)

In *Warmington, supra*, 101 Cal.App.4th 840, the court recognized that the required reasonable relationship between school facility needs and fees on new residential construction does not necessarily exist when a district imposes fees on the demolition and reconstruction of *already-existing units*.  The *Warmington* court evaluated the statutory scheme and concluded that although the statutes did not *require* a district to *exclude* preexisting square footage from the fees for new residential construction, the district could reasonably *include* the preexisting footage only *if* its fee study determined that

9

*reconstruction of preexisting square footage contributes to an increase in student population.* (*Warmington, supra*, 101 Cal.App.4th at pp. 852-867.)[6]

*Warmington* held that under the reasonable relationship standard set forth in section 66001, school impact fees on preexisting square footage in new residential construction required an evaluation by the school district as to whether the demolition and reconstruction of preexisting units in a new development project causes an increase in student population. (*Warmington, supra*, 101 Cal.App.4th at pp. 857-867.) That is, the school district's methodology for imposing the fees must consider whether reconstruction of existing units will "*generate additional numbers of students over and above those who occupied the previous homes at the site.*" (*Id.* at p. 859, italics added.) The trial court in *Warmington* found that fees could be imposed only for the additional square footage created by the development project, and thus awarded a partial refund to the developer based on the fees imposed for the preexisting square footage. (*Id.* at p. 847.) The appellate court in *Warmington* affirmed the trial court's partial refund order,

---

6 *Warmington*'s conclusion that the statutory scheme did not *mandate* exclusion of preexisting footage was based on the fact that in some statutory provisions the Legislature explicitly required a credit for preexisting footage, for example for new commercial or industrial construction (Ed. Code, § 17620, subd. (a)(1)(A)), for remodeling in the same residential structure (Ed. Code, § 17620, subd. (a)(1)(C)(i)), and for reconstruction of structures destroyed in a disaster (Ed. Code, § 17626). In contrast, there is no provision mandating a credit for preexisting footage in new residential construction. (*Warmington, supra*, 101 Cal.App.4th at pp. 854, 856.) However, *Warmington* then applied the reasonable relationship standard generally applicable to developer fees and concluded this required an evaluation of whether reconstruction of preexisting footage increased student population. (*Id.* at pp. 857-867.)

reasoning that the district's school impact fee study did not analyze whether the replacement of preexisting units would generate new students. (*Id*. at pp. 859-862, 867.)

### B. *The District's SFNA*

As mandated by the Level 2 statute (§ 65995.6, subd. (a)), the District's SFNA evaluates the need over the next five years for new school facilities for projected new students generated by anticipated new residential development (i.e., unhoused students) in the District. The SFNA estimates that 269 new "[n]on-mitigated" residential units would be constructed in the District; these new units would total 629,770 square feet; and they would generate 147 new students.[7] An evaluation of the District's existing resources revealed that the District did not have adequate seats to house all students generated from existing residential units, and there were no surplus properties or local funds available to meet the expected school facility needs arising from the estimated new residential construction.

Using the statutory formula set forth in section 65995.5, subdivision (c), the SFNA calculates the maximum Level 2 rate at $3.89 per square foot of new residential construction. To reach this figure, the SFNA divides the statutorily-permitted costs for new school facilities required for the estimated 147 new students ($2,450,543) by the total square footage of the projected new residential units (629,770 square feet) in the

---

[7] Nonmitigated units referred to units for which the impact on the District had not already been mitigated. In this regard, the SFNA explains that the construction of an additional 1,652 units was actually anticipated in the District, but the impacts of these units on the District had already been mitigated through "participation in community facilities district[s.]"

11

District. The SFNA explains the $2.4 million school facilities cost used in this formula was not an estimate of the *actual* cost of the anticipated new facilities, but rather was derived from a statutory standard using one-half of site acquisition and development costs and per-pupil construction grant figures.

In addition to calculating the Level 2 rate, the SFNA also evaluates whether the $3.89 Level 2 fee complied with the statutory reasonable relationship standard, and concludes it did. In support of this conclusion, the SFNA compiles the *actual* costs of constructing existing schools in the District, and using these figures calculates that the estimated 147 new students generated by the anticipated new residential housing in the District would actually result in $9,259,987 in school facility costs, which in turn could support a fee of $14.70 per square foot of new residential housing (i.e., $9,259,987 school facility cost divided by 629,770 total square feet of new future units). The SFNA concludes: "The amount to be included in the [Level 2 fee] is specified by statute. . . . The estimated average school facilities cost impacts on the School District per square foot of residential development is $14.70. As the actual school facilities cost impacts per square foot of residential construction is greater than the [Level 2 fee], it is reasonable for the School District to determine that the [Level 2 fee] of $3.89 per square foot . . . [is] roughly proportional and reasonably related to the actual impacts caused by residential development on the School District."

In an attached exhibit (Exhibit H), the SFNA also considers an estimation that some of the projected new residential units would arise from "[r]esidential [r]edevelopment"; i.e., the demolition and replacement of existing units with new units.

12

Based on a review of historical data, the SFNA estimates that 23 of the 269 new units would be replacement units, which would result in 131 estimated new students (instead of 147 new students). Using the actual cost data from past school construction in the District, the SFNA then calculates that the estimated actual school facilities costs for the 131 *net* new students would be $8,307,585, which translates to a fee of $13.19 per square foot of new residential housing (i.e., $8,307,585 total cost for net new students divided by 629,700 total square footage of all new units, including replacement units). The SFNA then reasons that because the actual cost impact of $13.19 per square foot is greater than the maximum Level 2 fee of $3.89 per square foot, the District would be "fully justified" in levying the Level 2 fee on *all* new residential units, including on units that replace existing units.[8]

After complying with the public review requirements and holding a public hearing on August 18, 2008, the District passed a resolution adopting the SFNA and "Level 2

_____

[8]     This portion of the SFNA states: "[T]he total cost impact per square foot . . . is $13.19 which is greater than the Alternative No. 2 Fee of $3.89 per square foot calculated in the Analysis. It should be noted that the actual cost impact produced by students generated from all non-mitigated Future Units, without consideration of those who have been displaced by Residential Redevelopment is $14.70 per square foot. . . . In summary, Residential Redevelopment was considered by reducing the projected number of unhoused student[s] from non-mitigated Future Units by the estimated number of students occupying units projected to be demolished over the next five (5) years. As a result, the number of projected unhoused students was reduced. The cost impact generated from this reduced number of unhoused students was then divided by the total assessable square footage, including that attributable to Residential Redevelopment. Despite reducing impacts by considering existing students living in units to be demolished, the total cost per square foot . . . exceeds the Alternative Fees justified in the Analysis. The School District is, therefore, fully justified in levying the Alternative Fees calculated in the Analysis on all non-mitigated Future Units, including those from Residential Redevelopment which may occur over the next five (5) years."

13

Fees in the amount of $3.89 per square foot of new non-mitigated residential construction, *including square footage realized as a result of demolition and reconstruction* not previously mitigated . . . ." (Italics added, boldface omitted.) Thus, the District's resolution adopted the SFNA's recommendation that the fees be imposed on preexisting square footage.

When denying Cresta Bella's request for relief in the ensuing litigation, the trial court found that in Exhibit H of the SFNA, the District had considered the cost impact of the preexisting residential units. The court concluded the District's methodology satisfied the reasonable relationship test required by the statutory scheme and constitutional principles.

C. *Analysis*

A school district "has the initial burden of producing evidence sufficient to demonstrate . . . a reasonable relationship between the [school impact] fee charged and the burden posed by the development." (*Home Builders Assn. of Tulare/Kings Counties, Inc. v. City of Lemoore* (2010) 185 Cal.App.4th 554, 562.) If the district meets this burden, the developer challenging the fee must "show that the record before the local agency clearly did not support the underlying determinations regarding the reasonableness of the relationship between the fee and the development." (*Ibid*.) When reviewing the imposition of district-wide school impact fees, we apply the standard applicable to quasi-legislative acts. (*Garrick, supra*, 3 Cal.App.4th at p. 328.) We perform the same function as the trial court, and determine whether the school district's

14

action was arbitrary, capricious, or entirely lacking in evidentiary support. (*Ibid*.; *Shapell, supra*, 1 Cal.App.4th at p. 233.)

In the context of school impact fees imposed on new residential development, the *Warmington* court recognized that the statutory reasonable relationship standard is satisfied if there is a connection between the new construction activity and *an increase in student population*. (*Warmington, supra*, 101 Cal.App.4th at p. 860.) Furthermore, in the context of fees on development that includes both newly-added *and preexisting square footage*, *Warmington* held that although the statutory scheme does not *mandate* a credit for preexisting footage, the imposition of fees on preexisting footage nevertheless must pass muster under the reasonable relationship standard. To justify fees on preexisting footage, *Warmington* interpreted the reasonable relationship standard to require a showing that reconstruction of preexisting footage *also contributes to an increase in student population*. If the school district does not show this connection between replacement of preexisting footage and increase in students, the fees may be imposed only on the newly-added footage that has been shown to increase student population. (*Warmington, supra*, 101 Cal.App.4th at pp. 854-867.)

We agree with *Warmington*'s conclusions on these points. Given that the entire focus of the school impact fee statutory scheme is to impose development fees for increases in student population, the reasonable relationship standard properly turns on the connection between new construction and an increase in student population. (See, e.g., § 65995.6, subd. (a) [SFNA should "determine the need for new school facilities . . . attributable to *projected enrollment growth* from the development of new residential

15

units . . . ,"], italics added; *Warmington, supra*, 101 Cal.App.4th at p. 857 [underlying purpose of school impact fee statutory scheme is "to address the impact on the affected school district of the *increase in student population* generated by the development"], italics added.) Further, to justify fees on preexisting square footage, there must be a *correlation* between reconstruction of preexisting square footage and an increase in student population. (*Warmington, supra*, 101 Cal.App.4th at p. 859.) Absent a showing that replacement of preexisting square footage generates new students, there is no " 'reasonable relationship between the fee charged and the burden posed by the development.' " (*Shapell, supra*, 1 Cal.App.4th at p. 235.)

It is apparent from the record of the proceedings before the trial court that Cresta Bella did not dispute the District's calculation of the Level 2 fee of $3.89 per square foot, and for the most part did not dispute that the District's imposition of this fee for *newly-added* square footage of residential construction satisfied the statutory reasonable relationship standard. The essential focus of Cresta Bella's challenge was that the District did not show the imposition of this fee on the *preexisting* square footage passed the reasonable relationship test. At times, both before the trial court and now on appeal, Cresta Bella has made cursory suggestions that the *entire* school impact fee was improper. Cresta Bella has not presented any developed argument explaining why fees on the newly-added square footage were improper, and we reject any such contention. The District's SFNA supports that the development of additional square footage in residential construction generates additional students, and Cresta Bella has not refuted this showing. Accordingly, the District properly collected fees for the newly-added

16

square footage. (See *Warmington, supra*, 101 Cal.App.4th at p. 860.)[9] Thus, we turn to the crux of Cresta Bella's challenge, which is the propriety of the fees for the preexisting square footage.

Consistent with the reasonable relationship test delineated in *Shapell, supra*, 1 Cal.App.4th at page 235, the District's SFNA shows the projected amount of district-wide new housing is 629,770 square feet; the estimated number of students generated by this new housing is 147 students; and the estimated costs to provide school facilities for these new students is $9,259,987 or $14.70 per square foot of new residential construction. Further, in Exhibit H the SFNA reflects that under its methodology the demolition and reconstruction of *preexisting* units in residential construction projects will *not* generate new students. Thus, based on the preexisting units factor, the SFNA reduces the projected new students to 131 and the estimated school facilities costs to $8,307,585 or $13.19 per square foot. The SFNA then concludes that the District may reasonably impose fees on preexisting square footage because under the statutory formula setting the maximum Level 2 rate at $3.89 per square foot, the District cannot recoup all of its facilities costs generated by the estimated new residential construction.

The District argues that unlike the circumstances in *Warmington*, its imposition of the school impact fee on preexisting square footage satisfied the reasonable relationship

---

9       Likewise, to the extent Cresta Bella is attempting to raise a challenge to the fees on the newly-added square footage under constitutional taking principles, any such claim was not supported by developed argument either before the trial court or on appeal. Thus, we decline to evaluate any such contention. (See *T.P. v. T.W.* (2011) 191 Cal.App.4th 1428, 1440, fn. 12.)

standard because in Exhibit H the SFNA considers the reduced cost impact from preexisting square footage.  We are not persuaded.

As stated, without a showing that reconstruction of preexisting footage increases student population, there is no reasonable relationship between the school impact fee and the burden posed by the development activity.  Here, the SFNA's analysis contains *no* evaluation of the nexus between replacement of preexisting footage and the generation of new students.  To the contrary, Exhibit H of the SFNA recognizes that under the methodology used in its analysis, replacement of  preexisting units do *not* generate new students because the units were already in existence prior to the new construction.  The fact that under the statutory formula the District cannot recover all its new facilities costs created by the increased students arising from the construction of additional residential units does not show that reconstruction of preexisting units was projected to be a contributing *cause* of the need for new school facilities.  Rather, the premise of the SFNA's analysis is that the cause of the District's need for new school facilities is *additional* residential units, not *preexisting* units.

There is no information or analysis in the District's SFNA reflecting that the District can be expected to incur an increase in student population based on the demolition and reconstruction of preexisting square footage in the District's residential units.  Under the analysis in Exhibit H, the District's position is that it is reasonable to charge fees for reconstruction of *preexisting square footage* (even though it has not been shown to increase student population) because (due to the statutory formula setting a maximum fee) the District cannot charge fees to fully recoup the costs generated by

18

*newly-added footage.* Hence, in the District's view, fees on preexisting footage are reasonable because a developer is not being charged more than the burden created by newly-added footage. The problem with this position is that it is the *statutory cap*, not the reconstruction of preexisting units, that has burdened the District with uncompensated costs arising from newly-added units. In short, under the District's study, the reconstruction of preexisting units is not the cause of the increased financial burden on the District; rather, newly-added units, combined with the statutory cap, cause this burden.

There may be circumstances in a particular school district's housing reconstruction trends that could support a correlation between reconstruction of preexisting residential units and the generation of new students; however, it is not contained in the SFNA under consideration in this case. Thus, the District did not carry its burden to produce evidence showing a reasonable relationship between the need for new school facilities and the replacement of preexisting square footage. Accordingly, the District's failure to exclude preexisting square footage from its fees for new residential construction was arbitrary and unreasonable under the statutory scheme, and Cresta Bella is entitled to a refund for the fees imposed on the preexisting square footage in its project.

We note that when rejecting Cresta Bella's protest to the imposition of fees on the preexisting square footage, the District pointed out that the preexisting units had never been subjected to school impact fees because they were built in 1964, which was before the enactment of the school impact fee statutes. On appeal, the District suggests that for this reason Cresta Bella should now pay fees for the preexisting square footage. In

19

*Warmington*, the court rejected this contention, and we agree with its conclusion. (*Warmington, supra*, 101 Cal.App.4th at p. 862.) The fact that no fees had been levied for preexisting units in the past does not show that the units cause an increased need for school facilities when the units are demolished and reconstructed.

Given our conclusion that Cresta Bella is entitled to a partial refund under the statutory reasonable relationship standard, we need not reach its constitutional taking claim nor its request for declaratory relief.

### DISPOSITION

The judgment is reversed and the matter remanded to the trial court. The trial court shall grant the petition for writ of mandate and order a partial refund to Cresta Bella based on the portion of the fees derived from the preexisting square footage in the development project. Respondent to pay appellant's costs on appeal.


HALLER, J.

WE CONCUR:


HUFFMAN, Acting P. J.


NARES, J.

20