Filed 11/5/20

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| AMCAL CHICO LLC, | C087700 |
| Plaintiff and Appellant, | (Super. Ct. No. 17CV01321) |
| v. | |
| CHICO UNIFIED SCHOOL DISTRICT, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Butte County, Michael P. Candela, Judge. Affirmed.

Cox, Castle & Nicholson and Kenneth B. Bley for Plaintiff and Appellant.

Orbach Huff Suarez + Henderson, Philip J. Henderson, Kimble R. Cook and Carolyn M. Aguilar for Defendant and Respondent.

Atkinson, Andelson, Loya, Ruud & Romo, Martin A. Hom and Jennifer D. Cantrell for Coalition for Adequate School Housing as Amicus Curiae on behalf of Defendant and Respondent.

Education Code section 17620 authorizes public school districts to levy a fee against new residential developments in order to fund the construction or reconstruction of school facilities to accommodate the increase in students likely to accompany the new developments.  In order to impose the fee, a school district must comply with Government Code section 66001, which requires that the district determine that (1) there is a reasonable relationship between the fee's use and the type of development on which the fee is imposed and (2) there is a reasonable relationship between the need for the school facilities for which the fees will be used and the residential development upon which the fee is imposed.[1]

Plaintiff AMCAL Chico, LLC (AMCAL) constructed a dormitory complex that will house unmarried university students within the boundaries of defendant Chico Unified School District (the District).  The District imposed school impact fees on the complex and AMCAL filed suit seeking a refund of the fees.  The trial court granted the District's motion for summary judgment.  AMCAL appeals, arguing the fees must be refunded because the District failed to comply with section 66001, the fee is an invalid special tax, and the fee is an improper taking.  We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

**Mitigation Fee Act**

Education Code section 17620 authorizes school districts to levy a fee against new residential construction within the boundaries of the school district for the purpose of funding the construction of school facilities.  Every two years the State Allocation Board sets the maximum square foot rate for school impact developer fees the school district can assess.  (Gov. Code, § 65995, subd. (b)(3).)  In February 2016 the State Allocation Board set the fee for new construction at $3.48 per square foot of assessable space.

---

[1] Undesignated statutory references are to the Government Code.

2

The Mitigation Fee Act (§ 66000 et seq.) imposes limitations on a district's assessment of fees by requiring a reasonable relationship between the fees assessed and the impact of the type of development on the district's facilities. "In the context of school impact fees, the reasonable relationship standard can be satisfied by showing (1) the projected total amount of new housing expected to be built within the district; (2) the estimated number of students to be generated by the new housing; and (3) the estimated cost to provide the necessary school facilities for that approximate number of students. [Citations.] This showing may properly be derived from districtwide estimations concerning anticipated new residential development and impact on school facilities." (*Cresta Bella, LP v. Poway Unified School Dist.* (2013) 218 Cal.App.4th 438, 446-447 (*Cresta Bella*); *Shapell Industries, Inc. v. Governing Board* (1991) 1 Cal.App.4th 218, 235 (*Shapell*).)

For a general fee applied to all new residential development, a site-specific showing is not required. Instead, this showing may be derived from districtwide estimations concerning new residential development and impact on school facilities. The school district is not required to evaluate the impact of a particular development project before imposing fees. Instead, the required nexus is established based on the justifiable imposition of fees on a class of development rather than particular projects. (*Cresta Bella, supra*, 218 Cal.App.4th at p. 447; *Garrick Development Co. v. Hayward Unified School Dist.* (1992) 3 Cal.App.4th 320, 334-335 (*Garrick*).)

**The District Fee Study**

The District commissioned Koppel & Gruber Public Finance (Koppel & Gruber) to assist the District with creating a fee justification study to analyze future development and the corresponding impact on the District. Koppel & Gruber obtained new residential construction development information from the city planning department and projected

3

the amount of new housing to be built over the next 10 years. The firm concluded future development would generate 2,894 new residential units.

Koppel & Gruber next calculated the potential number of students generated by the new construction. The firm considered property data from the assessor's office, including classification of all residential properties, and then calculated the student generation rate for both single-family and multi-family buildings. Koppel & Gruber compared the property data to the District's student addresses to determine the student numbers for both single-family and multi-family residences. The firm calculated the number of students that would be generated at each school grade based on that rate, multiplied by the anticipated number of new residential units to be constructed and calculated that 709 new students would be generated by new residential construction.

Koppel & Gruber calculated the cost to provide school facilities for the number of projected new students, concluding the District's existing facilities were inadequate to house new students from new residential construction. The firm estimated the costs of facilities per student and the impact of the anticipated students from new development and estimated the impact to be $4.22 per square foot of residential construction.

Following a presentation to the District and a public hearing, the District passed a resolution formally adopting the fee study. Although the fee study found an impact of $4.22 per square foot, the District imposed the statutory school fee of $3.48 on new residential construction.

**AMCAL'S Project**

AMCAL developed a "building intended to house college students" (the Project) within the boundaries of the District. The Project contains over 600 beds to be leased to students at the local state university. Renters must be 18 years old and enrolled in a degree program.

4

In December 2016 AMCAL provided a rationale for the District to exempt the Project from the school impact mitigation fees. AMCAL argued the facility would be rented by the bed, with locks on each bedroom and bathroom for security and privacy, furnished units, shuttle service to the campus, 12-month leases, and residential assistants to work with students. In addition, the physical layout of the building was tailored for students, not the general rental market.

However, the Project is not associated with any college, but is a private 173-unit, 216,476-square-foot residential apartment complex. The Project is zoned as "medium high density residential." AMCAL cannot refuse to rent to families with children.

In January 2017 AMCAL renewed its claim that the Project was exempt from school impact mitigation fees, but recognized they would have seven fulltime employees, which would result in a fee of $6,098 under the District's formula.

**Fee Imposed by the District**

Based on the fee justification study, the District assessed the Project at the residential fee rate, citing its zoning as a multi-family residential structure and not entitled to an exemption under Education Code section 17620, subdivision (a)(1) or Government Code sections 65995 through 65998. Under protest, AMCAL paid $537,576.50 in fees calculated at the residential rate of $3.48 per square foot in March 2017. AMCAL submitted a protest letter requesting the District provide documents supporting the imposition of the fees.

**Subsequent Litigation**

In May 2017 AMCAL filed a complaint alleging three causes of action: the District failed to comply with the Mitigation Fee Act; the fee constituted an invalid special tax because the fee exceeded the cost of the school facilities needed to mitigate the impact of the Project; and the imposition of the fee constituted an invalid taking

5

because there was no nexus between the fee imposed and the impact of the Project. The District filed an answer.

The District and AMCAL both filed motions for summary judgment. The court denied both motions finding triable issues of material fact. The parties agreed to an in camera court trial and filed supplemental briefing in light of a recent decision in *1901 First Street Owner, LLC v. Tustin Unified School District* (2018) 21 Cal.App.5th 1186.

In May 2018, following a court trial, the court found "a facility housing college students, such as this one, is not a separate class of residential development. Rather a residential apartment building, such as this one, is a residential apartment building regardless of its present, or intended, occupants. Plaintiff's subjective classification does not make the residential apartment building less so for mitigation fee assessment purposes. [¶] Defendant's school fee justification study and its conclusion that a reasonable relationship exists between the projected new development within the Defendant's boundaries, together with Defendant's duty and responsibility to prepare for construction and/or reconstruction of school facilities to house potential additional elementary school, junior high school, and high school students, as a result of that new residential construction, was reasonable. Defendant has, therefore, met it burden under Government Code § 66001. As such, the Court concludes the mitigation fee assessed by the Defendant was proper."

The trial court subsequently issued a final judgment in favor of the District as stated in the ruling. The court also found pursuant to *Shapell, supra*, 1 Cal.App.4th 218, the District's fee did not constitute a special tax and was not a taking without just compensation. AMCAL filed a timely notice of appeal.

In its reply brief, AMCAL acknowledged the decision in *Tanimura & Antle Fresh Foods, Inc. v. Salinas Union High School Dist.* (2019) 34 Cal.App.5th 775 (*Tanimura*). We granted the Coalition for Adequate School Housing's petition for leave to file an amicus curiae brief raising the new case and the parties filed responsive briefs.

6

## DISCUSSION

## I

The decision to impose developer fees for school facilities is a legislative, rather than quasi-judicial decision. (*Shapell, supra*, 1 Cal.App.4th at p. 231.) We review the District's decision for an abuse of discretion. We determine whether the action was arbitrary, capricious or lacking in evidentiary support and whether it failed to conform to procedural requirements. (*Garrick, supra*, 3 Cal.App.4th at p. 328.)

In reviewing the adequacy of the District's fee justification study, we review the record to ensure the District has adequately considered all relevant factors and has demonstrated a rational connection between the factors, the choice made, and the purposes of the enabling statute. On appeal, we presume the District's choices were correct and do not question its wisdom or substitute other choices where the issues are debatable. We uphold the District's conclusion even if reasonable minds might differ. (*Shapell, supra*, 1 Cal.App.4th at p. 239.)

## II

AMCAL argues it is entitled to a refund of the mitigation fee because the District failed to comply with section 66001. According to AMCAL, its building "is a separate class of residential development that doesn't generate District students, something that would have been made clear if the District had looked at the student generation rate – zero – for the eight public and three private buildings housing students attending Chico State." The District was required to determine whether a residential development will generate new students in order to justify imposition of the fee. In support, AMCAL cites *SummerHill Winchester LLC v. Campbell Union School Dist.* (2018) 30 Cal.App.5th 545, *Warmington Old Town Associates v. Tustin Unified School Dist.* (2002) 101 Cal.App.4th 840, and *Cresta Bella, supra*, 218 Cal.App.4th 438.

7

The decision in *Tanimura* considered the requirements under *Warmington* and *Cresta Bella.* In *Tanimura*, the appellate court had to decide whether a school district acted reasonably in imposing school impact fees on a new residential development project intended to house only adult seasonal farmworkers. The trial court found no reasonable relationship between the fee and the project's impact on school enrollment and granted the developer's petition for writ of mandate to refund the fees. On appeal, the school district argued the statutes do not require a school district anticipate and analyze specific use cases for subtypes of residential housing, such as housing for adult employees. Instead the statutes require a reasonable relationship between the fee's use, the need for school facilities and the type of development project, which was residential. (*Tanimura, supra*, 34 Cal.App.5th at p. 779.)

The *Tanimura* court reversed. The court carefully considered the definition of project in sections 66001, subdivisions (a) and (b):

"The Mitigation Fee Act broadly defines 'development project' as 'any project undertaken for the purpose of development.' (§ 66000, subd. (a).) This makes sense because section 66001 is not limited to school impact fees but 'governs a wide range of local agency actions taken under differing requirements.' [Citation.] There are two ways that a local agency—here the District—can satisfy the Mitigation Fee Act's 'reasonable relationship' requirement for the imposition of developer fees. Section 66001, subdivision (a) requires in relevant part the determination of a reasonable relationship between both 'the fee's use and the type of development project on which the fee is imposed' [citation] and 'the need for the public facility and the type of development project on which the fee is imposed.' [Citation.] Section 60001, subdivision (b) requires the more specific determination of 'a reasonable relationship between the amount of the fee and the cost of the public facility or portion of the public facility attributable to the development on which the fee is imposed.

8

"In *Garrick*, the Court of Appeal explained that section 66001, subdivision (a)'s reference to 'use and need in relation to a "type" of development project . . . applies to an initial, quasi-legislative adoption of development fees' [citation], whereas section 66001, subdivision (b) 'applies to adjudicatory, case-by-case actions.' [Citation.] The difference between subdivision (a) and (b) of section 66001 is revealing because only the latter demands information pertaining to an individual development. [Citation.] By contrast, section 66001, subdivision (a) 'clearly applies to decisions to impose fees on a *class* of development projects rather than particular ones.' [Citation.] 'The fact that subdivision (a) speaks of a relationship between the use and need on one hand and the "type" of development on the other . . . defeats any argument that some nexus must be found between the fee and a *particular* project on which it is imposed.' [Citation.]

"We emphasize the language of section 66001, subdivision (a) because [the developer's] briefing on appeal at times blurs this distinction, suggesting that the District needed to identify a reasonable relationship 'between the purpose of the fee, the amount of the fee, and the projected impacts of the project the fee is imposed on.' That depiction is subtly inaccurate. The District's adoption of a prospective, districtwide Level 2 fee was quasi-legislative. As shown above, the plain language of section 66001, subdivision (a) focuses the reasonable relationship test on 'type' or class if development and the fee's use and need for the facility (§ 66001, subd. (a)), not on the project itself (cf. § 66001, subd. (b)). Viewed in relation to 'development project' as defined in section 66000, use of the word 'type' in section 66001, subdivision (a)(3) and (4) provides the agency a realistic means of fulfilling its statutory mandate to determine reasonableness when adopting a fee of general applicability. In other words, 'type' in the context of section 66001, subdivision (a) allows an agency to impose a general fee reasonably related to projected development impacts without tying its analysis to an individual project. It is a generic enabler for an agency to proceed with a quasi-legislative determination." (*Tanimura, supra*, 34 Cal.App.5th at pp. 791-792.)

9

The court in *Tanimura* then reconciled its findings with *Warmington* and *Cresta Bella*:

"Both cases involved the imposition of school impact fees on residential redevelopment, and each time the court found that the fee study failed to determine a reasonable relationship between redevelopment construction on preexisting square footage and school facilities needs. [Citations.]

"In *Warmington*, the redevelopment project decreased the number of residential housing units from 56 apartment units to 38 single-family homes. [Citation.] The court first examined the application of school impact fees on redevelopment construction as a matter of statutory interpretation. [Citation.] It found based on the statutory scheme and legislative history that the statute did not mandate exclusion of redevelopment construction from the imposition of school-impact fees; however, to charge fees on preexisting square footage, a school district had to make the required nexus findings under section 66001, subdivision (a). [Citation.] Regarding the nexus requirement, the court found that the fee imposed on the project was invalid because the fee study did not address 'the class of redevelopment construction that displaces existing residential housing on the same site' [citation] and also contained no analysis to justify imposing a fee on redevelopment that would generate fewer students than before. [Citation.] The court concluded that there was no evidence to support the imposition of school impact fees on preexisting square footage and affirmed a refund of those fees. [Citation.]

"*Cresta Bella* closely followed *Warmington*. [Citation.] The school district's needs analysis calculated a Level 2 fee based on projected residential construction in the district, estimating that some of the new units would come from redevelopment based on the demolition and replacement of existing units. [Citation.] Because the estimated 'actual cost impact' of the projected residential development exceeded the maximum Level 2 fee under the statute, the school district determined it would be 'fully justified' in levying the Level 2 fee on *all* new residential units, including on units that replace

10

existing units.' [Citation.]  The appellate court rejected this approach.  It echoed the *Warmington* court in interpreting the reasonable relationship standard 'to require a showing that reconstruction of preexisting square footage *also contributes to an increase in student population*.'  [Citation.]

"The appellate court reasoned that contrary to showing a connection between replacement of preexisting square footage and the generation of new students, the district's need analysis in fact found that 'replacement of preexisting units does *not* generate new students, because the units were already in existence prior to the new construction.'  [Citation.]  The court recognized the possibility that housing reconstruction 'could support a correlation between reconstruction of preexisting residential units and the generation of new students' but concluded that the school district did not make such a showing.  [Citation.]  Consequently, the court ordered the trial court to grant the writ of mandate for a partial refund to the developer based on the portion of fees derived from preexisting square footage.  [Citation.]

"[Developer] contends that *Warmington* and *Cresta Bella* support its position that a fee study that analyzes only general types of residential development cannot be the basis for imposing impact fees on a different type of residential project that was not considered in the study and that has different impacts from those studied.  But in both of those cases, the 'type' of project not considered was redevelopment construction, a class whose distinguishing characteristics (being built upon preexisting square footage) is readily compatible with analysis in a fee study using historic data per the statute.

"Here, by contrast, the distinguishing characteristic that renders imposition of the Level 2 fee problematic is the project's designation for adults only, without dependents. Unlike the general category of redevelopment construction, this designation is not itself a 'type' contemplated in the statute (as shown above), and it is highly project specific. Because the Legislature did not identify adults-only or even employee specific housing for either an exception or alternative treatment under the statute, we believe it would be

11

incongruous to fault the needs analysis for failing to consider it." (*Tanimura, supra*, 34 Cal.App.5th at pp. 798-800.)

We find the reasoning of *Tanimura* persuasive. A careful consideration of the Mitigation Fee Act does not support a developer's claim that a school district must make an individualized determination for each particular project. Instead, as in the present case, the school district must make findings based on the general type of construction, such as residential construction. The District conducted a fee study analyzing new residential construction. As the trial court found, the District's fee study conclusion was reasonable and the mitigation fee was proper. We agree with the trial court's conclusion.[2]

### III

On appeal, AMCAL renews its argument that the fee imposed constituted an invalid special tax. The trial court rejected this argument, relying on *Shapnell, supra*, 1 Cal.App.4th 218.

"[D]evelopment fees are not invalid as special taxes if they do not exceed the cost of the facilities for which they are imposed." (*Shapnell, supra*, 1 Cal App.4th at p. 247.) "[F]acility fees are justified only to the extent that they are limited to the cost of increased services made necessary by virtue of development. [Citations.] The Board imposing the fee must therefore show that a valid method was used for arriving at the fee in question, 'one which established a reasonable relationship between the fee charged and the burden posed by the development.' " (*Id.* at p. 235.)

---

[2] AMCAL argues *Tanimura* is distinguishable for several reasons. We find none of these arguments persuasive.

12

We find the imposed fee was reasonable and complied with the Mitigation Fee Act. Therefore, the fee does not constitute an invalid tax.[3]

## IV

Finally, AMCAL contends it is entitled to a refund of the mitigation fee because it constitutes a taking without payment of just compensation. Again, the trial court rejected the claim, relying on *Ehrlich v. City of Culver City* (1996) 12 Cal.4th 854 (*Ehrlich*).

Developer fees generally do not constitute a taking if the fee is reasonably related to the impacts of the type of new residential development on the school district's school facilities and meet the requirements of the Mitigation Fee Act. (*Ehrlich, supra*, 12 Cal.4th at pp. 874-876.) Here, the District's fee complied with the Mitigation Fee Act and did not constitute a taking.

---

[3] AMCAL's counsel has made the court aware of the Supreme Court's observations in *Wilde v. City of Dunsmuir* (2020) 9 Cal.5th 1105, 1116 regarding the distinction between fees and taxes. In that case, the issue was whether a measure adopting water rates is exempt under the Constitution's referendum provision "as a 'statute[] providing for tax levies?' ([Cal. Const., a]rt. II, § 9, subd. (a).)" (*Wilde*, at p. 1117.) The court pointed out that "the word 'tax,' on its own, has no single 'fixed meaning.' (*Sinclair Paint* [*Co. v. State Bd. of Equalization* (1997)] 15 Cal.4th [866,] 874.) This was as true in 1911, when the referendum provision was adopted, as it is today." (*Ibid*.) The observation is not helpful here.

## DISPOSITION

The judgment is affirmed.  The District shall recover costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

              /s/
RAYE, P. J.

We concur:

       /s/
MAURO, J.

       /s/
HOCH, J.